■ THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v QUINCY GOLDEN et al., Respondents. [764 NYS2d 761] —Appeal

from an order of Supreme Court, Onondaga County (Brunetti, J.), dated November 21, 2001, which dismissed counts one, two, three, four, and eight of the indictment and reduced count five of the indictment from assault in the second degree to assault in the third degree.

It is hereby ordered that the order so appealed from be and the same hereby is unanimously modified on the law by reinstating counts three and four of the indictment and by reinstating the charge of assault in the second degree under count five of the indictment and as modified the order is affirmed, and the matter is remitted to Supreme Court, Onondaga County, for further proceedings on the indictment in accordance with the following memorandum: As limited by their brief, the People appeal from an order dismissing counts one and two of the indictment, charging the four defendants herein with robbery in the second degree (Penal Law § 160.10 [1], [2] [a]), dismissing counts three and four, charging them with attempted robbery in the second degree (§§ 110.00, 160.10 [1], [2] [a]), and reducing count five from assault in the second degree (§ 120.05 [6]) to assault in the third degree. We conclude that Supreme Court erred in dismissing counts three and four and in reducing count five. In reviewing whether an indictment is supported by legally sufficient evidence, the court must " 'inquir[e] whether the evidence [presented by the People,] viewed in the light most favorable to [them], if unexplained and uncontradicted, would warrant conviction by a petit jury' " (*People v Sylvester*, 254 AD2d 711, 711-712 [1998]). Thus, our "inquiry is limited to 'whether the facts, if proven, and the inferences that logically flow from those facts supply proof of every element of the charged crimes,' and whether 'the [g]rand [j]ury could rationally have drawn the guilty inference' " (*People v Bello*, 92 NY2d 523, 526 [1998]).

Here, two detectives testified before the grand jury that, while working on an undercover assignment, they attempted to purchase two $10-bags of crack cocaine from defendant Kelson Merriweather. They described the behavior of Merriweather as unusual because, during their conversation with him, he insisted that the detectives had more than the $20 they showed him, and the conversation "centered on money" rather than the quantity of drugs being purchased. While the detective in the driver's seat of the unmarked police vehicle was speaking to Merriweather, a car came around the corner at a high rate of speed and stopped abruptly in front of the unmarked police vehicle. Defendants Quincy Golden, Eric Richmond and Mileke Williams exited that vehicle and walked quickly to the driver's

side of the unmarked police vehicle. Both detectives testified that, in addition to defendants, two other men were standing near the window on the driver's side of the unmarked police vehicle, and the detectives heard someone say, "are we going to do this," along with two references to their throats being cut. The detective who was driving was trying to "keep the conversation going normal" when Golden unexpectedly punched him in the side of the head, causing his head to hit the shoulder of his partner in the passenger seat. He kept his head down below the dashboard, yelled for the backup police to "move in," and sped down the street. He pulled over so that his partner could drive, and the two detectives immediately returned to the scene, where the police had defendants in custody. The two detectives discovered that a $10 bill was missing, but neither could say whether it was taken or was somehow lost during the incident. The detective in the driver's seat testified that, as a result of being punched, he was dazed, he had blood in his eye and nose, and his lips and tongue were bleeding. He sustained a black eye and had pain and swelling at the side of his head, pain at the base of his head and jaw, and headaches. At the time of his grand jury testimony, which was six days after the incident, he had not resumed normal work duties and continued to have a black eye and pain and swelling in his head and jaw, but the headaches had subsided that day.

We conclude that, when viewed in the light most favorable to the People, the evidence is "legally sufficient to support the inference" that defendants, acting with others actually present, attempted to steal the money and/or the unmarked police vehicle forcibly from the detectives (*People v Jensen,* 86 NY2d 248, 252 [1995]; *see* Penal Law § 110.00) and that the "evidence of the subjective pain [of the detective] * * *, the swelling induced by the injury, and the length of time that the pain and swelling continued is sufficient at this stage to establish physical injury" (*Sylvester,* 254 AD2d at 712). We therefore modify the order by reinstating counts three and four of the indictment and by reinstating the charge of assault in the second degree under count five of the indictment, and we remit the matter to Supreme Court, Onondaga County, for further proceedings on the indictment in accordance with this decision. Present—Pine, J.P., Hurlbutt, Scudder and Hayes, JJ.